757 So.2d 887 (2000)
STATE of Louisiana
v.
Robert BLACK.
No. 98-KA-0457.
Court of Appeal of Louisiana, Fourth Circuit.
March 22, 2000.
*888 Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Attorney for Defendant/Appellant, Robert Black.
Richard Ieyoub, Attorney General, State of Louisiana, Darryl W. Bubrig, Sr., District Attorney of Parish of Plaquemines, Pointe-A-La-Hache, LA, and Gilbert V. Andry, III, Assistant District Attorney, New Orleans, Louisiana, Attorneys for the State of Louisiana/Appellee.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge PATRICIA RIVET MURRAY and Judge ROBERT A. KATZ).
MURRAY, Judge.
Robert Black appeals his conviction and sentence for aggravated rape of a juvenile. He alleges that the trial court improperly admitted other crimes evidence at trial, and erred in imposing the maximum sentence and ordering the sentence to run consecutively with a sentence for related charges to which he pled guilty. For the following reasons, we affirm the conviction and sentence.

*889 STATEMENT OF THE CASE:
Robert Black was charged by indictment with one count of aggravated rape of a juvenile and nine counts of molestation of a juvenile. He pled guilty under a plea bargain to eight counts of molestation[1] and was sentenced to five years at hard labor on each count, to run concurrently. Following a Prieur hearing, the trial court ruled that evidence of Mr. Black's acts of molestation charged in the companion indictment would be admitted to show his prurient interest, attraction to females, and intent at the trial on the aggravated rape charge. A jury found Mr. Black guilty of the responsive verdict of sexual battery, and he was subsequently sentenced to serve the maximum of ten years at hard labor, without benefit of probation, parole, or suspension of sentence, to run consecutively to the sentences for the molestation convictions.

STATEMENT OF THE FACTS:[2]
In August of 1993, GL moved with her three daughters to Belle Chasse from Oregon, and lived with Mr. Black's sister for a short time. GL had first met Robert Black on a visit to Louisiana in 1978. GL and her daughters eventually settled into a two-bedroom trailer, and about a month later, Mr. Black moved in with them.
KG, GL's eleven and one-half year old daughter, was enrolled in special education classes due to learning and behavioral problems. Her behavior problems were generally controlled by daily medication, however in October of 1995, she was being unusually disruptive, and her teacher, Susan Rayes, took her into the hall to speak to her privately. KG told Ms. Rayes that she had a problem at home. She stated that her mother's boyfriend was touching her in the wrong spots and pointed to her breasts and genital area. She repeated the allegation and began crying. Ms. Rayes took KG to the office of Dr. Stansbury, the guidance counselor, and called Child Protection Services.
Patricia Jackson from Child Protection arrived at the school a short time later, and questioned KG in the presence of Ms. Rayes and Dr. Stansbury. KG repeated the previous allegations relative to Mr. Black touching her on her breasts and vagina, and further told them that he put "his thing in her thing." She explained where at her house these events occurred. KG's testimony at trial was consistent with her report of the incident to Ms. Rayes and Ms. Jackson. Ms. Jackson drove KG home and interviewed the sisters there.
Both sisters revealed to Ms. Jackson that Mr. Black touched them in "the wrong spot." Previous to the individual interviews with Ms. Jackson, neither sister had discussed these incidents with anyone.
The eldest sister, AF, testified at trial that Mr. Black touched her with his private parts, and put his hands on her vagina and breasts. She testified that her clothes were on, but that he touched her under her clothes. He did these things to her over ten times, when she and Mr. Black were alone, because her sisters were playing at a neighbor's house or asleep. She testified that on one particular occasion, Mr. Black tried to touch her and pull her down, but she started to holler, and he said he did not want to "F____" with her anymore. Mr. Black left her alone after that.
The youngest sister, DB, testified that Mr. Black, her father, touched her on "the wrong spot," which she indicated was her vagina. She testified that he did this to her when she was with him at her aunt's house. DB did not tell anyone about the incident because she did not think anyone would believe her.
All three girls and their mother testified that KG took a different bus home from *890 school and arrived home a short time before her sisters. Their mother, GL, worked forty-hour weeks as a temporary office worker, usually at jobs in New Orleans. Additionally, she rehearsed with the church choir on Wednesday nights and participated in Bible study on Thursday nights. Mr. Black was alone with the children at these times.
AF and DB both testified about an incident when they were outside playing in a small wading pool, and KG was inside. DB went to the trailer to get some towels and found the door locked. She tried a window, but it was blocked with a stick. Finally, after DB knocked, Mr. Black opened the door.
GL testified that her daughters never told her anything about Mr. Black doing anything inappropriate. She testified that her daughters were not exposed to sexually explicit movies or other material at home. After Mr. Black was arrested, she moved with the children to another part of the city.
GL further testified that Mr. Black called her from jail about a month after his arrest. He told her that he was sorry for the hurt he caused her and the children. She testified that "he said that they said it was aggravated and it wasn't, you know, like it was forced." She then explained to him that the law had age "limitations" about rape. She reported this conversation to Detective Mary McClendon at the Sheriffs Office.
Detective McClendon confirmed that on December 8, 1995 GL reported the phone call to her. Detective McClendon further testified that she audiotaped the conversation in which GL reported the call to her from Mr. Black.
In accordance with the policy of Child Protection Service, Dr. Scott Benton of Children's Hospital examined the three sisters. Dr. Benton testified that he took a history from KG that was consistent with her earlier reports and her trial testimony. KG told him that Mr. Black put his "wiener" in the wrong spot. KG noticed some male and female dolls in Dr. Benton's office and, "on her own accord and without asking, she took the clothes off the dolls and began to demonstrate penile, vaginal contact."
He further testified that the physical exam of KG did not reveal sexual abuse, but that this did not always indicate that no sexual abuse occurred. He explained that with the onset of puberty, which occurs internally at about eight years of age, the hymen membrane becomes thick and elastic and can accommodate sexual intercourse without damage. He additionally testified that the vagina is coated with mucus tissue that repairs or heals itself in a short period of time. Lastly, he noted that penetration of the vaginal lips may occur without penetration of the hymen.
The prosecutor submitted a chart into evidence to prove that KG, whose date of birth is April 6, 1984, was less than twelve years of age when the incidents occurred.

ASSIGNMENT OF ERROR NO. 1:
Mr. Black argues that the trial court erred in permitting the State to present evidence of other acts of molestation against the victim and her sisters. Article 404(B) of the Louisiana Code of Evidence provides the basic rule regarding the use of evidence of "other crimes, wrongs or acts" at trial. It states in pertinent part:
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates *891 to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
This issue was discussed at length in State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960. In that case, the defendant was charged with two counts of molestation of a juvenile. The juveniles in question were the defendant's nieces. The other act which the State sought to introduce was an overheard statement by the defendant to his neighbor's eight-year-old daughter that he had seen her in her bedroom naked "with her legs open and her arms open." The court noted that the State was not trying to imply that the defendant had actually seen the neighbor child naked in her room, but rather that the substance of the statement was a product of the defendant's imagination. The court found the statement was independently relevant to show the defendant's lustful disposition towards young girls and thus his specific intent to sexually molest his nieces.
The court in Miller noted that, besides the exceptions enumerated in Article 404(B), there are several other statutory and jurisprudential rules which play a role in determining the admissibility of such evidence. First, the element, which the evidence tends to prove, must be truly at issue. State v. Jackson, 625 So.2d 146 (La.1993). Second, the State is required to prove the defendant committed these other acts by clear and convincing evidence. State v. Davis, 449 So.2d 466 (La. 1984). Third, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La.Code Evid. art. 403. Finally, the appellant must be given notice and afforded a hearing at which the State must show that the evidence is neither repetitive nor cumulative, and is not being introduced merely to show the defendant is of bad character. State v. Prieur, 277 So.2d 126 (La.1973). In addition, at the request of the defendant, the court must give an instruction to the jury at the time the evidence is introduced and again at the close of the trial, that the other crimes evidence serves a limited purpose and that the defendant cannot be convicted for any crime other than the one charged or a responsive offense.
Mr. Black argues that the trial court erred in admitting his alleged "other crimes" against the victim in this case, as well as those committed against her sisters. He claims that admitting the evidence to prove his general prurient interest is tantamount to admitting it to prove that he is of bad character, an inadmissible purpose.
However, as to the other acts committed against the victim, our review of the facts indicates that those acts were so inextricably included in the victim's testimony and first report that they could not reasonably have been excluded. In any event, the introduction of other acts of sexual abuse involving the same victim in order to show the defendant's lustful disposition towards the victim is permissible. State v. Acliese, 403 So.2d 665 (La.1981)
The trial court found that the evidence of the molestation offenses committed by Mr. Black against the victim's sisters tended to prove the appellant's lustful disposition toward young children, not just towards women in general. Aggravated rape is a general intent crime; nevertheless, the element of intent is an essential ingredient. Evidence of similar but disconnected crimes is relevant to show the intent with which the act was committed. See State v. Jackson, 625 So.2d 146 (La.1993); State v. Cupit, 189 La. 509, 179 So. 837 (1938). As noted by the State, the evidence further shows that Mr. Black took advantage of one-on-one situations with the sisters when he was left alone with any one of them in the trailer. The evidence is thus admissible as relevant to intent, motive and plan under La.Code Evid. art. 404(B).
*892 Mr. Black was given ample notice of the State's intent to use the other crimes evidence. He was provided with a hearing on the issue of admissibility, at which the victim and her sisters related details of his actions towards them. The court held that the other crimes evidence was admissible, but that Mr. Black's guilty pleas and convictions as to the other offenses were inadmissible unless he testified. Limiting instructions were given at the conclusion of the direct examination of each of the sisters, in anticipation of the request from defense counsel.
Lastly, like the statement to the neighbor's child in Miller, the acts of molestation described by the victim and her sisters in this case were far less serious than the aggravated rape for which Mr. Black was tried and thus, did not unduly inflame the jury. The probative value of the evidence therefore outweighed its prejudicial effect.

ASSIGNMENT OF ERROR NO. 2:
Mr. Black argues that the trial court erred by imposing the maximum sentence, and then by ordering that it run consecutively to the sentence imposed for his convictions for the eight counts of molestation. Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "[n]o law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La.App. 4 Cir.1985).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim. Proc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with La.Code Crim. Proc. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468 (La.1983); State v. Quebedeaux, supra. Where the trial court finds that the facts supported a higher verdict, those facts may adequately support the sentence imposed. See State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608.
When the trial judge fails to sufficiently set forth the factors considered in the imposition of this sentence, there is no need to remand the matter for resentencing if the record clearly shows an adequate factual basis which supports the sentence imposed. State v. Welch, 550 So.2d 265 (La.App. 4 Cir.1989), writ denied, 94-0437 (La.6/21/96), 675 So.2d 1071.
At sentencing, the prosecutor furnished the court with a copy of a report from a local hospital relative to treatment received by the victim. The court noted the victim's previous emotional problems, as well as her trauma at reliving the offense at trial. The trial court noted that the jury found Mr. Black guilty of the lesser included offense of sexual battery although the evidence was sufficient to support the aggravated rape charge. The court further noted that Mr. Black committed his crimes over a large span of time, and took advantage of a young and disabled child. From this, the court concluded that Mr. Black had a "predatory nature." The court further found that a lesser sentence would deprecate the seriousness of the offense. The trial court's reasoning and the facts of the case both support the maximum sentence in this case.
Louisiana Code Criminal Procedure art. 883 provides that sentences for two or more offenses based on the same act or transaction, or which are part of a common *893 scheme or plan, shall be served concurrently unless the court expressly directs otherwise. Other sentences shall be served consecutively unless the court expressly directs otherwise. The sexual battery against the instant victim, though similar in scheme and plan as the molestations involved in the other conviction, was a separate and distinct offense. As unrelated convictions, the sentences were properly ordered to be served consecutively. State v. Bullock, 576 So.2d 453 (La. 1991).
Even had the offenses been part of a common plan, the trial court adequately justified the imposition of a consecutive sentence by its finding that Mr. Black had shown a predatory and thus dangerous nature.

ERRORS PATENT REVIEW
A review of the record for errors patent indicates that there were none.
Accordingly, for the reasons set forth above, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The State dismissed one count.
[2] The initials of the victim, her two sisters, who were witnesses at trial, and the girls' mother, will be used in this opinion to protect their privacy.