JOAN BERNARD ARMSTRONG, Chief Judge.
 

 |tOn September 17, 2008, the defendant, James Johnson, was charged with the attempted first-degree murder of Lynard Stewart. He entered a plea of not guilty. Defense counsel filed motions to suppress the evidence, statement, identification and for a preliminary hearing. On November 7, 2008, the trial court denied the motion to suppress the evidence and found probable cause to hold the defendant for trial. On January 13, 2009, following a jury trial, the defendant was found guilty as charged. On June 29, 2009, the trial court denied the motion for a new trial. On June 30, 2009, the defendant was sentenced to serve twenty-five years at hard labor without benefit of parole, probation or suspension of sentence and with credit for time served.
 

 On direct examination by the State, Officer Johnny Harper testified that on July 26, 2008, at approximately 9:50 p.m., he responded to a call of an aggravated battery with a firearm at the corner of Josephine and Laurel Streets. Upon arrival at the crime scene Officer Harper observed a black male lying in the grass behind a wooden telephone pole. The victim had been shot multiple times but was alert. The victim described his assailant to Officer Harper as a black male, approximately 12six feet two inches in height wearing a white tee shirt, blue jeans and tennis shoes with a low style hair cut.
 

 On cross-examination, Officer Harper testified that he spoke to the victim before the ambulance arrived. Once he received a description of the perpetrator he put it out over the radio to all police units. He described the hair style as short but not dreadlocks. The victim did not describe the shooter as having any tattoos, gold teeth or wearing gold jewelry.
 

 Officer Wayne Delarge
 
 [1]
 
 testified that on July 26, 2008, he was assigned to investigate a shooting. Upon arrival at the scene, he observed the victim inside an ambulance being prepped for transport to the hospital. He did not speak to the victim. He also observed a white Mitsubishi Montero parked on the corner outside of the B & S Food Store. He noticed seven nine millimeter casings, four of which were in the 2100 block of Laurel and three of which were in the intersection of Josephine and Laurel. He also noticed two five dollar bills in the middle of the intersection. He contacted the crime lab to process the scene and to collect the casings and the money.
 

 On August 8, 2008, Officer DeLarge went to Mobile, Alabama where he met with the victim with whom he had spoken
 
 *879
 
 on the telephone several days before. Detective DeLarge testified the following account of the incident as related to him by the victim in Mobile: The victim explained that he went to the B & S Food Store to purchase organic tea. While shopping he held ten dollars in his hand. He noticed two unknown subjects in the store, but thought nothing of it. After learning that the store did not have the brand of tea that he wanted, the victim |;iexited the store. He was immediately bumped by the defendant who was one of the unknown subjects whom he had seen inside the store. The defendant pointed a gun at him and demanded his money. The victim believed that he would be shot even if he gave the defendant the money. A scuffle ensued. It was raining. The gun slipped. The victim ran toward a utility pole for cover. The victim was shot in the arm and leg.
 

 Detective DeLarge was able to develop a suspect after receiving information from Detective Nick Gernon that the shooter was a man named James “Poo” Johnson. Detective DeLarge compiled a photographic line up. Detective DeLarge presented the victim with a closed manila folder containing the photographic line up when he met with him in Mobile. He asked the victim to open the folder and view the photographs and tell him if anyone looked familiar. The victim, within seconds, identified the defendant, in photograph number five, as the man that shot him. The victim printed his name and signed and dated the back of the defendant’s picture. Detective DeLarge described the victim as very sure of his identification. Detective DeLarge did not suggest, promise, threaten or coerce the victim into making an identification.
 

 An arrest warrant was issued for the defendant’s arrest. A search warrant was also prepared and executed at 823 Josephine Street, which the defendant’s criminal record listed as his last known address. No evidence of the shooting was found at that location.
 

 On cross-examination, Detective De-Large stated that upon his arrival at the crime scene he was unable to speak to the victim because the victim was being treated for his wounds. Prior to the defendant’s arrest, Detective DeLarge ran a |4check of his NCIC record. He discovered that the defendant had been arrested for two felonies but did not have any convictions.
 

 Detective DeLarge obtained a description of the shooter from the initial investigating officer and from his sergeant who interviewed the victim at the hospital. The shooter was described as six feet to six feet two inches in height with a slim build and a dark complexion. The following day, he received information that a confidential informant had identified the shooter as James “Poo” Johnson. The photographic line up was compiled on July 30, 2008. Thereafter, Detective DeLarge learned, prior to the victim’s identification, that during the first week of August the defendant had been arrested on an unrelated charge.
 

 Detective Nicholas Cernon
 
 [2]
 
 of the investigations homicide division, testified that he received information from a confidential informant that one of the men involved in the shooting on July 26, 2008 was known by the street name “Poo” and that his real name was James Johnson. Detective Cernon testified on both direct and cross-examination that he had used the informant in the past and that the informant proved reliable and led to indict-
 
 *880
 
 merits. He denied that the informant was paid for the information.
 

 The victim, Lynard Stewart
 
 [3]
 
 , testified that he had a prior conviction for carrying a concealed weapon in 1989. On July 26, 2008, he traveled to New Orleans with his wife and sons to visit his grandmother and to do some remodeling work on his home. After driving his sons to his grandmother’s home, he went to the B & S Food Store on the corner of Laurel and Josephine Streets to buy Starburst candy for his son and Arizona ice tea for himself. He parked his Montero |BSUV and entered the store. He observed several unknown individuals inside the store and exchanged greetings with them. He went to the counter and asked about the candy and tea. He pulled two five dollar bills from his pocket. The lady at the counter told him that the store did not have either the candy or the tea. Stewart picked up his money and put it back in his pocket.
 

 As Mr. Stewart exited the store he observed the defendant, who was one of the individuals he saw inside the store, standing outside by the door. Mr. Stewart walked to his parked car. As he looked back he saw the defendant standing behind him. Mr. Stewart asked defendant “what’s up?” The defendant pointed a gun at Stewart and told him that he wanted his “fucking money.” The defendant was not wearing a mask or a hat. Believing that he was going to be shot, Mr. Stewart grabbed the gun, and a struggle ensued. When the defendant got control of the gun, Mr. Stewart ran and tried to hide behind a light pole. As he ran zig zagging from right to left he heard multiple gun shots. He was shot in his arm and leg and fell to the ground. A Guardian Angel who was patrolling the area came to his aid and called 911. While on the ground Mr. Stewart tried to use his cell phone to take a picture of the license plate of the get away car but was unable to do so. Mr. Stewart remembered speaking to police officers that night and giving them a description of the shooter, but due to the pain that he was experiencing, he did not remember the exact description of the shooter that he gave to the police. He testified that Detective DeLarge drove to Mobile and showed him a photographic line-up. He immediately identified the defendant, in photograph number five, as the person who shot him. He signed the back of the defendant’s photograph.
 

 On cross-examination by the defense, Mr. Stewart testified that his children were not with him when he drove to the store. He was familiar it because he grew |,jUp in the neighborhood. He testified that the defendant was alone when he approached him. He parked on Laurel Street, around the corner from the store, and the light pole was between fifty and one hundred feet from his car. After Mr. Stewart’s surgery, Detective DeLarge traveled to Mobile, Alabama on August 8, 2008 to show him a photographic lineup. Detective DeLarge asked him to view the photographs to see if he could identify anyone. Prior to viewing the lineup, he did not know if the defendant’s picture was or was not included in the lineup. When he saw the defendant’s picture, he immediately recognized him as the man who shot him. He said it took only seconds for him to recognize the defendant as his assailant. He signed his name on the back of the defendant’s photograph.
 

 ERRORS PATENT:
 

 A review for errors patent reveals none.
 

 ASSIGNMENT OF ERROR NO. 1
 

 In his first assignment of error, the defendant argues that the trial court erred
 
 *881
 
 in denying his motion to suppress the identification. Specifically, the defendant argues that the photographic lineup was unreliable and suggestive because the defendant had shoulder length hair and a lighter complexion than the other four subjects.
 

 The defendant bears the burden of proving that an out-of-court identification was suggestive and that there was a substantial likelihood of misidentification as a result of the identification procedure.
 
 State v. Ballett,
 
 98-2568, p. 17 (La.App. 4 Cir. 3/15/00), 756 So.2d 587, 597;
 
 State v. Martello,
 
 98-2066, p. 8 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, 1198. A defendant must first prove that the identification was suggestive.
 
 State v. Thibodeaux,
 
 98-1673, pp. 20-21 (La.9/8/99), 750 So.2d 916, 932. An identification procedure is suggestive if it focuses l7attention on the defendant.
 
 State v. Layman,
 
 97-1520, p. 16 (La.App. 4 Cir. 3/15/00), 756 So.2d 1160, 1172. However, even a suggestive identification will be admissible if it is found reliable under the totality of circumstances.
 
 Id.
 
 In
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth a five-factor test to determine whether an identification is rehable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation.
 
 State v. Green,
 
 98-1021, p. 12 (La.App. 4 Cir. 12/22/99), 750 So.2d 343, 350. In reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case.
 
 State v. Nogess,
 
 98-0670, p. 11 (LaApp. 4 Cir. 3/3/99), 729 So.2d 132, 137.
 

 Here, there is nothing to show that the procedure used during the photographic lineup was suggestive. Detective DeLarge compiled a photographic lineup. When he arrived in Mobile on August 8, 2008, he met the victim at a Motel 6. Detective DeLarge presented the victim with a closed manila folder containing the photographic line up. He asked the victim to open the folder and view the photographs and tell him if anyone looked familiar. The victim, within seconds, identified the defendant, in photograph number five, as the man who shot him. The victim printed his name and signed and dated the back of the defendant’s picture. Detective De-Large described the victim as very sure of his identification. Detective DeLarge did not suggest, promise, threaten or coerce the victim into making an identification.
 

 IsA review of the photographic lineup shows a minimal difference in hair length and complexion between the defendant’s photograph and the other four subjects. Even assuming, arguendo, that there was some minimal suggestiveness, Mr. Steward had an excellent opportunity to view the defendant inside the store, outside the store and during the robbery. Mr. Steward was close enough to defendant to be able to grab the gun and struggle with the defendant before Mr. Steward ran for his life. The positive identification in the instant case came within thirteen days of the crime. Thus, applying the five factors set forth in
 
 Manson v. Brathwaite,
 
 Mr. Steward’s identification of defendant was reliable. The trial court properly denied the defendant’s motion to suppress the identification.
 

 ASSIGNMENT OF ERROR NO. 2
 

 In his second assignment of error, the defendant asserts that his twenty-five year sentence is unconstitutionally exces
 
 *882
 
 sive because the victim’s injuries were serious but not life threatening and his children were not with him at the time of the shooting.
 

 Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. La. Const. Art. I, 20;
 
 State v. Landry,
 
 03-1671, p. 7 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239. A sentence may violate a defendant’s constitutional right against excessive punishment even if it is within the statutory limit.
 
 Landry, supra; State v. Dorthey,
 
 623 So.2d 1276, 1280 (La.1993). A sentence within the statutory limit is constitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition of pain and suffering.
 
 Landry, supra,
 
 03-1671, p. 8, 871 So.2d at 1239, citing
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672, 676.
 

 | ¡^Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case.
 
 State v. Black,
 
 98-0457, p. 8 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 892. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case.
 
 State v. Caston,
 
 477 So.2d 868, 871 (La.App. 4 Cir. 1985). The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense charged.
 
 State v. Quebedeaux,
 
 424 So.2d 1009, 1014 (La.1982).
 

 The trial court has great discretion in sentencing within the statutory limits.
 
 State v. Trahan,
 
 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
 

 La. R.S. 14:30(C)(2) provides that anyone convicted of first degree murder in Louisiana when a capital verdict is not sought, shall be punished by life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
 

 La. R.S. 14:27 D(1)(a) states that anyone convicted of the attempted commission of an offense that would otherwise be punishable by death or life imprisonment shall be imprisoned at hard labor for not less than ten nor more than fifty year without the benefit of parole, probation or suspension of sentence.
 

 In this case, the defendant was convicted of attempted first degree murder. A conviction of first degree murder mandates a minimum sentence of life, but for |inan attempt to commit first degree murder, the defendant faced a sentencing range of ten to fifty years.
 

 In tailoring the defendant’s sentence in this case, the trial court noted that the victim was shot in the upper left bicep area of his arm which shattered the bone and in his heel which traveled through his calf. The court further noted that the victim was hospitalized for an extended period of time and had to undergo lengthy physical therapy to gain regular use of his arm and leg. Finally, the court noted that defendant had another armed robbery charge pending. Prior to sentencing the trial court noted that the sentencing range was ten to fifty years.
 

 In State
 
 v. Laird,
 
 572 So.2d 793 (La.App. 4th Cir.1990) this court held that a sentence of forty years at hard labor for a defendant convicted of attempted first degree murder and other offenses was not
 
 *883
 
 excessive, even though the defendant was a first time offender.
 

 In
 
 State v. McLaurin,
 
 32,708 (La.App. 2 Cir. 10/27/99), 743 So.2d 928, the defendant pleaded guilty to attempted first degree murder. His twenty-five year sentence was held not excessive.
 

 In
 
 State v. Jones,
 
 99-1074 (La.App. 3 Cir. 3/8/00), 758 So.2d 905, the defendant pleaded guilty to two counts of attempted first degree murder. His forty year sentence on each count was held not excessive.
 

 The trial judge followed the guidelines set forth in La.C.Cr.P. art. 894.1(C) by articulating for the record the basis for the defendant’s twenty-five year sentence. We find no error in the sentence imposed upon the defendant.
 

 |nFor the foregoing reasons, we affirm the defendant’s conviction and sentence.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . He testified at both the motion to suppress hearing and at trial.
 

 [2]
 

 . He testified at both the motion to suppress hearing and at trial.
 

 [3]
 

 . He testified at both the motion to suppress hearing and at trial.