DANIEL L. DYSART, Judge.
| T Defendant, Julio Ruano, appeals his convictions of simple burglary of an automobile, aggravated battery and second degree battery. His sole contention on appeal is that the trial court erred in denying his motion to suppress. Our review of the *910 record reflects no error in the trial court’s ruling and we, therefore, affirm defendant’s conviction and sentence.
PROCEDURAL BACKGROUND
By bill of information dated September 22, 2010, defendant was charged with one count of simply burglary, one count of second degree battery and one count of aggravated battery.[1] Defendant’s motion to suppress was denied by the trial court and, after waiving his right to a jury, defendant proceeded to trial over the course of three days in October, 2010. The trial court found defendant guilty on all three charges and sentenced defendant to serve seven years at hard labor on the simple burglary and aggravated battery convictions and five years at hard labor on the second degree battery charge, all sentences to run concurrently.[2]
J^F ACTUAL BACKGROUND
On the afternoon of April 8, 2010, the ■victim, Terencio Salinas, had completed his work day and, while traveling east on the Interstate 610, his van developed a flat tire. He pulled onto the shoulder of the interstate and called his wife, who sent her son, Ruben Suazo, and his friend, Yoni Sanchez-Aguilera, to assist him. The three men left the vehicle on the side of the interstate and drove to a tire shop where the tire from Mr. Salinas’ vehicle was repaired. They returned to Mr. Salinas’ vehicle and noticed another vehicle parked in front and a man taking items from Mr. Salinas’ vehicle.
Mr. Salinas approached the man, later identified as the defendant, who had by then gotten into his vehicle. Mr. Salinas asked the man about the items taken from Mr. Salinas’ vehicle at which point, the man threatened to shoot Mr. Salinas. As the man attempted to drive away, Mr. Salinas “threw himself on top,” “grabbed the steering wheel” and placed his leg in the vehicle to prevent him from “accelerating] and leaving].” A physical altercation ensured for approximately 20-25 minutes, during which time, the man bit Mr. Salinas several times and bit off part of Mr. Salinas’ ear. The man also struck Mr. Salinas with a “pry bar.” One of Ms. Salinas’ teeth was broken during the altercation. Eventually, Mr. Salinas gave up and the man left the scene. Mr. Salinas was hospitalized for three days as a result of the injuries he received.
After his release from the hospital, Mr. Salinas was “determined to find” the man and undertook an effort to locate him, searching facilities often frequented by people of Hispanic descent.[3] Some time later, at a local grocery store, Mr. Salinas |<jSaw defendant and immediately recognized him as the man involved in the April altercation who had stolen his property from his vehicle. The defendant registered a look of surprise. When the defendant left the store, Mr. Salinas followed him and obtained the license plate to the vehicle he was driving.[4] Mr. Salinas contacted the New Orleans police department and provided it with the license plate number. The license plate belonged to a vehicle registered to defendant.
On April 21, 2010, Mr. Salinas was shown a photographic line-up and Mr. Salinas identified defendant as his assailant. He confirmed that identification in court as *911 well. The same photographic line up was shown to Mr. Suazo and a witness, Aris-tede Craig, Sr.,[5] both of whom positively identified defendant. Both of whom again identified defendant as Mr. Salinas’ attacker at trial.
DISCUSSION
In his sole assignment of error, defendant maintains that the trial court erred in denying his motion to suppress. He argues that the photographic identification process was suggestive and thus, tainted the victim and the witnesses’ identifications of defendant. In this regard, defendant argues that only one of the photographs matched the description given of assailant and that defendant’s photograph in the line-up was larger than the others. Having reviewed the record, including the photographs, we find no merit to defendant’s assignment of error.[6]
Our jurisprudence is well-settled that a defendant has the burden of proving that an identification was suggestive and that the procedure resulted in the likelihood of misidentification. State v. Harold, 03-0649, p. 6 (La.App. 4 Cir. 11/12/03), 861 So.2d 262, 265-6, citing State v. Prudholm, 446 So.2d 729, 738 (La.1984). A defendant must first prove that the identification was suggestive. State v. Johnson, 09-1393, p. 7 (La.App. 4 Cir. 7/29/10), 44 So.3d 876, 881, citing State v. Thibodeaux, 98-1673, pp. 20-21 (La.9/8/99), 750 So.2d 916, 932.
Courts have consistently held that a “suggestive identification” is one that focuses the -witness’s attention on a defendant. Id., citing State v. Laymon, 97-1520, p. 16 (La.App. 4 Cir. 3/15/00), 756 So.2d 1160, 1172; Thibodeaux, supra, p. 21, 750 So.2d at 932. However, even it is shown that an identification is suggestive, this Court has noted that this “is not determinative regarding the admissibility of the identification. The likelihood of a mis-identification is what violates due process, not suggestibility by itself.” Harold, supra, p. 6, 861 So.2d at 266. Likewise, even a suggestive identification will be admissible if it is found reliable under the totality of circumstances. Johnson, supra, p. 7, 44 So.3d at 881, citing State v. Laymon, supra, p. 16, 756 So.2d at 1172.
Courts have also consistently held that, in the case of a suggestive identification procedure, the court must then determine whether there was a substantial likelihood of misidentification by looking to the five factors enunciated in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and as adopted by the Louisiana Supreme Court in Prudholm, supra, 446 So.2d at 738. See State v. Holmes, 05-1248, p. 6 (La.App. 4 Cir. 5/10/06), 931 So.2d 1157, 1161; State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 134-5; State v. Martin, 595 So.2d 592, 595 (La.1992). Those factors are: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the | ^length of time between the crime and the confrontation. Johnson, supra, p. 7, 44 So.3d at 881.
The trial court’s determination on the admissibility of identification evi *912 dence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Green, 98-1021 (La.App. 4 Cir. 12/22/99), 750 So.2d 343, 350. In evaluating a defendant’s argument on a motion to suppress, the reviewing court may consider all pertinent evidence adduced at the trial, as well as at the hearing on the motion to suppress the identification. State v. Lewis, 04-0227 (La.App. 4 Cir. 9/29/04); 885 So.2d 641, 652.
In the instant matter, we find nothing to suggest that the procedure used during the line-up was suggestive. Detective Nigel Baddoo, who compiled the lineup, interviewed defendant at his home and, with his permission, obtained his photograph. He prepared the line-up, shuffled the pictures and handed them to Mr. Salinas, who positively identified defendant. He followed this same procedure with Mr. Suazo and Mr. Craig. With all of the witnesses, Detective Baddoo advised that they take their time, that the photographic line-up may not contain the perpetrator’s photograph and that they should not feel compelled to identify anyone. There is nothing in the record to suggest that Detective Baddoo “suggest[ed], promise[d], threaten[ed] or coerce[d] the victim [or the witnesses] into making an identification.” See: Johnson, supra, p. 3, 44 So.3d at 881.
We likewise find no error in the trial court’s conclusion that, while there are some differences in the photographs, those differences do not suggest a possibility of misidentification. We find no merit to defendant’s argument that his photograph is larger than the others. While two or three of the faces in the photographs are slightly smaller than defendant’s, two are of virtually the same size as defendant’s Rface. Nor do we find that the other photographs depict men so substantially different in appearance than the description given of defendant that the identification procedure was suggestive. We therefore find nothing in the photograph line-up that drew undue focus on defendant’s photograph.
Because we find that the photograph line-up was not suggestive, we need not address the remaining Manson factors. However, as we found in Johnson, supra, even assuming that there was some minimal suggestiveness, Mr. Salinas had a more than sufficient opportunity to view defendant, given the length of time of the altercation and the fact that he was face-to-face with him, as did both Mr. Suazo and Mr. Craig. Similarly, the positive identifications of defendant were made within two weeks of the crime. We conclude that the trial court’s properly denied defendant’s motion to suppress. We affirm defendant’s conviction and sentence.
AFFIRMED

. These charges are violations of La. R.S. 14:62, 14:34.1 and 14:34, respectively.

. Defendant was also ordered to pay restitution of $3,944.35 in connection with the conviction of aggravated battery.

. Mr. Salinas, a native of Nicaragua, testified that he knew the man to be of Hispanic descent as well.

. The vehicle was not the same vehicle as that used on the day of the incident.

. At the time of the incident, Mr. Craig was driving on Interstate 610 and stopped after being flagged by two men. He saw two people fighting inside a vehicle, and witnessed defendant strike Mr. Salinas with a tire iron. Mr. Craig stayed at the scene of the incident until the police arrived.

. We have also reviewed the record for errors patent and found none.