| STATE OF LOUISIANA | * | NO. 2019-KA-0709 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| JULIO RUANO | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 500-456, SECTION "K"
Honorable Arthur Hunter, Judge

* * * * * *

**Judge Regina Bartholomew-Woods**

* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart,
Judge Sandra Cabrina Jenkins, Judge Regina Bartholomew-Woods,
Judge Paula A. Brown)

**BELSOME, J., CONCURS WITH REASONS**
**DYSART, J., RESPECTFULLY DISSENTS WITH REASONS SET FORTH**
**BY JUDGE JENKINS**
**JENKINS, J., DISSENTS WITH REASONS**

Jeff Landry
ATTORNEY GENERAL
Grant Lloyd Willis
LA DEPARTMENT OF JUSTICE - CRIMINAL DIVISION
P. O. Box 94005
Baton Rouge, LA 70804-9005

     COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Donna Orjuela
Martin Edward Regan, Jr.
REGAN LAW, PLC
2125 St. Charles Avenue
New Orleans, LA 70130

     COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED AND REMANDED**
**MARCH 4, 2020**

Appellant, Julio Ruano ("Appellant"), was convicted of simple burglary, second degree battery, and aggravated battery, to which he was sentenced to seven (7) years at hard labor. Thereafter, Appellant sought post-conviction relief that the district court granted and set aside Appellant's conviction. Subsequently, Appellant filed an Application for Compensation for Wrongful Conviction and Imprisonment pursuant to La. R.S. 15:572.8. Following a hearing, the district court denied the application finding that Appellant failed to prove by clear and convincing scientific or other evidence that he was factually innocent of the crime. Appellant appealed. For the reasons that follow, we reverse the district court's ruling and remand the matter for further proceedings.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 8, 2010, Terencio Salinas was traveling eastbound on Interstate 610 when his vehicle experienced a flat tire;[1] therefore, he pulled onto the shoulder of the interstate. Mr. Salinas contacted his girlfriend who, in turn, sent her son,

---

[1] Mr. Salinas experiences a flat tire somewhere between the Canal Street exit and the St. Bernard exit.

1

Ruben Suazo, and his friend, Yoni Sanchez-Aguilera, to assist Mr. Salinas. The three (3) men left the vehicle on the shoulder of the interstate and took Mr. Salinas' flat tire to a tire shop to be repaired.[2] Upon returning to Mr. Salinas' disabled vehicle, they discovered an unknown man, whom they believed to be Appellant, removing power tools from Mr. Salinas' vehicle. Aristede Craig, a passerby, stopped to render assistance to Mr. Salinas. A struggle, lasting approximately twenty to twenty-five minutes, ensued between the assailant and Mr. Salinas during which the assailant bit and stabbed Mr. Salinas. As a result, Mr. Salinas suffered a bitten-off ear and broken teeth. After the struggle, The assailant fled the scene. Mr. Salinas was transported to the hospital, where he remained for three (3) days receiving treatment for his injuries.

While hospitalized, detectives from the New Orleans Police Department obtained Mr. Salinas' statement and photographed his injuries. After his release, Mr. Salinas recognized a man whom he believed to be the assailant at a grocery store, wrote down this man's license plate number, and reported this information to the police. The police generated a six-person photographic line-up from which Mr. Salinas, Mr. Suazo, and Mr. Craig all identified Appellant as the assailant. Subsequently, Appellant was arrested.

On September 22, 2010, the State filed a bill of information charging Appellant with one count of aggravated battery, one count of simple burglary, and one count of second degree battery. Following an October 31, 2011 bench trial, the

---

[2] The tire shop was located off the Chef Menteur exit.

district court found Appellant guilty as charged on each count. Appellant filed a motion for new trial, which the district court denied. On January 9, 2012, the district court sentenced Appellant to seven (7) years as to each count, and ordered the sentences to run concurrently. On appeal, this Court affirmed Appellant's conviction and sentence; the Louisiana Supreme Court denied writs. *State v. Ruano*, 2012-1517 (La. App. 4 Cir. 7/31/13); 120 So.3d 908. On June 12, 2015, Appellant filed an application for post-conviction relief. On March 28, 2017, the district court granted Appellant's application for post-conviction relief, set aside Appellant's conviction, and ordered a new trial. On June 12, 2017, the State entered a *nolle prosequi* as to all charges.

On September 14, 2017, Appellant filed an Application for Compensation for Wrongful Conviction and Imprisonment pursuant to La. R.S 15:572.8; the district count conducted a contradictory hearing on March 9, 2018. At the hearing, Appellant, *inter alia*, presented the testimony of Dr. Robert Barsley, a forensic odontologist, who testified that bite-mark evidence was sufficient to exclude Appellant as Mr. Salinas' assailant. Also, at this hearing, Mr. Salinas, Mr. Suazo, and Mr. Craig each identified Appellant as the assailant. On March 29, 2018, at the conclusion of the hearing, the district court denied the application finding that Appellant failed to prove by clear and convincing scientific or other evidence that he is factually innocent of the crime for which he was convicted. Appellant now appeals.

*Assignment of Error*

Appellant raises as his sole assignment of error whether the district court abused its discretion by denying his application for compensation for wrongful conviction and imprisonment pursuant to La. R.S. 15:572.8.

*Standard of Review*

This Court, upon appellate review of an Application for Compensation for Wrongful Conviction and Imprisonment pursuant to La. R.S. 15:572.8, must afford great weight to the findings of the trier of fact and apply the manifest error standard.[3] *State v. Ford*, 50,525, p. 5 (La. App. 2 Cir. 5/18/16); 193 So.3d 1242, 1247. Further, "[t]he issue is not whether the trial court's findings are right or wrong, but whether they are reasonable on the record as a whole. *Id.*

## DISCUSSION

Louisiana Revised Statute 15:572.8[4] addresses compensation for wrongful conviction and imprisonment and provides, in pertinent part:

> A petitioner is entitled to compensation in accordance with this Section if he has served in whole or in part a

---

[3] The Louisiana Supreme Court, in *Burge v. State*, reasoned that "this application is not a civil lawsuit." 2010-2229, p. 5 (La. 2/11/11); 54 So.3d 1110, 1113; *Burrell v. State*, 50,157, p. 6 (La. App. 2 Cir. 1/13/16); 184 So.3d 246, 250.

[4] In 2005, the Louisiana legislature enacted La. R.S. 15: 572.8 "to create an application for those wrongfully convicted and imprisoned." *Burge*, 2010-2229, p. 3; 54 So.3d at 1112; 2005 La. Acts, No. 486, § 1, effective September 1, 2005. Further, "while La. R.S. 15:572.8 . . . formerly provided that '[a]ll applications for compensation as provided in this Section shall be filed in the Nineteenth Judicial District Court,' the statute was amended by 2007 La. Acts, No. 262, § 1 to now provide that such claims must be 'filed in the district court in which the original conviction was obtained[.]' This change in the statute became effective on August 15, 2007. *Sampson v. State, LA's Risk Mgmt.*, 2008-0714, *unpub.* (La. App. 1 Cir. 9/23/08); 2008 WL 4332540 at *1 (La. Pp. 1 Cir. 9/23/08).

4

sentence of imprisonment under the laws of this state for a crime for which he was convicted and:

> (1) The conviction of the petitioner has been reversed or vacated; and
>
> (2) The petitioner has proven by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted.

La. R.S. 15:572.8(A)

Appellant, pursuant to La. R.S. 15:572.8(A)(2), must prove "by clear and convincing scientific or non-scientific evidence that he is factually innocent[5] of the crime for which he was convicted." Further, La. R.S. 15:572.8(B) provides that factual innocence "means that the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction." Moreover,

> The applicant's burden of proof is very clearly provided for by statute: one must prove a conviction for which he served imprisonment has been either vacated or reversed, and by clear and convincing evidence, scientific or not, that he is "factually innocent," i.e., that he did not commit the crime for which he was convicted or any crime based on the same set of facts used in that conviction.
>
> Clearly, the statute requires more than just a showing that a conviction has been overturned or vacated. Implicitly, it reflects the intent that compensation will not be awardable in every matter in which post-conviction relief has been granted. An applicant must also prove by clear and convincing evidence that he did not commit the crime or any other

---

[5] The Louisiana Supreme Court has explained that "factual innocence is different than legal innocence. Actual innocence is not demonstrated merely by showing that there was insufficient evidence to prove guilt beyond a reasonable doubt." *State v. Pierre*, 2013-0873, p. 9 (La. 10/15/13); 125 So.3d 403, 409 (quoting *Gould v. Comm. of Correction*, 301 Conn. 544, 22 A. 3d 1196, 1206 (2011).

5

crime based on the same set of facts used in that conviction.

*In re Williams*, 2007-1380, p. 5 (La. App. 1 Cir. 2/20/08); 984 So.2d 789, 793.

The defendant in *Ford* "did not produce any evidence in addition to that which is contained in the record of the criminal proceeding and the motion to vacate his conviction and sentence." *Ford*, 50,525, p. 12; 193 So.3d at 1250.[6] Contrarily, in the instant case, Appellant provided the testimony of an expert witness – forensic odontologist, Dr. Robert Barsley. Dr. Barsley is a 1977 graduate of the Louisiana State University Health Science Center School of Dentistry and a 1987 graduate of Loyola University New Orleans College of Law.[7] At the time of this hearing, Dr. Barsley had taught at the Louisiana State University Health Science Center School of Dentistry for thirty-eight (38) years. Additionally, for more than thirty (30) years, Dr. Barsley had belonged to the American Academy of Forensic Sciences, an organization of approximately 7,000 professionals who specialize in forensic areas such as fingerprints, toxicology, DNA, pathology, and dentistry.[8] Dr. Barsley is the chair of the odontology section of the National Institute of Standards, which examines how identifications are made on individuals who are killed in plane or train crashes. Dr. Barsley trains other dentists in forensic bite marks. Dr. Barsley, along with a retired judge from Chicago, published "Case

---

[6] Pursuant to La. R.S. 15:572.8, the district "court may consider any relevant evidence regardless of whether it was admissible in, or excluded from, the criminal trial in which the petitioner was convicted."

[7] Dr. Barsley is licensed to practice law in Louisiana.

[8] Approximately twenty (20) years ago, Dr. Barsley was designated a fellow of the American Academy of Forensic Sciences in recognition of his participation in the organization and his work and publications in the field.

Law in Bitemark Evidence" and "Case Law and Bitemark Evidence" and discussed how appellate courts handle bite mark evidence; Dr. Barsley testified that his "conclusion at this point is that no court on appeals ever denied bite mark evidence to be allowed in a trial."

When testifying about the photographs of the bite marks that Mr. Salinas sustained, Dr. Barsley explained that "a dentist doesn't witness the bite nor in many cases does the dentist actually see the bite either in the coroner's office or the hospital, so much of our work is done off of photographs. So we [odontologists] know how to look at photographs, how to use photographs, and . . . to take photographs, how to do it properly." At this hearing, Dr. Barsley produced a life-sized replica or mold of Appellant's teeth. Dr. Barsley, after comparing the replica or mold of Appellant's teeth with the photographs of the bite marks inflicted on Mr. Salinas, concluded that Appellant could not have, in "no way," inflicted the bite marks; further, Appellant's "teeth do not have the arrangement that would be required of a set of biting teeth to make that and that includes his top teeth also." Appellant's teeth were "relatively straight" and "at least three of them line up almost perfectly straight" and the teeth that inflicted the bite marks were "crooked." While Dr. Barsley could not conclude who inflicted those bite marks, he was certain that Appellant could be excluded as Mr. Salinas' assailant.

On cross-examination, when asked whether he considered that bite marks change over time and can be distorted by skin's elasticity, Dr. Barsley explained the bite marks showed that the assailant's teeth were arranged in the shape of a

"W" and Appellant's teeth were straight. While he acknowledged that distortions could occur, the position of the teeth or shape of the bite was not a distortion that could occur. Dr. Barsley also testified that he showed the photos of the bite marks inflicted on Mr. Salinas and Appellant's mold to other experts in the field of odontology and these experts reached the same conclusion—that Appellant's teeth could not have inflicted the bite marks on Mr. Salinas. Dr. Barsley emphasized that this is "a case of exclusion" and "the only question that's being asked here, not who made it, not how it was made, not when it was made, but could these teeth have inflicted this injury?" Dr. Barsley further testified that "[a]nyone who made that bite had to have teeth that were crooked and that's the entire point. [Appellant's] teeth are not crooked."

The Louisiana Supreme Court has observed that, "[u]nquestionably, eyewitness identifications can be imperfect." *State v. Young*, 2009-1177, p. 12 (La. 4/5/10); 35 So.3d 1042, 1049. However, despite, other objective evidence, in the instant matter, the district court found "persuasive that three witnesses had identified [Appellant] as the [assailant]." Next, the assailant was described as driving a green jeep with an infant's car seat in the backseat. At the hearing, Mr. Salinas, on direct examination, explained that there was a crying infant in the backseat of the assailant's vehicle. Contrary to this testimony, Appellant testified that he had never driven a green jeep, and was allowed to introduce into evidence varying automotive insurance policies to confirm this. Further, Appellant, in his application for post-conviction relief, provided

photographs and birth certificates of his children to show that he had no small children or grandchildren, at the time of the incident, and did not have an infant's car seat in the back of his vehicle.

Appellant further explained that he was able to locate and take photographs of a man who better fit the description of the assailant; this man drove a green jeep with a baby seat and tools in the back.

At the hearing, Mr. Salinas described the physical altercation with the assailant. According to Mr. Salinas, the assailant hit, bit, and stabbed him. During the physical altercation, Mr. Salinas recounted "wrestling" and "fighting" with the assailant. Shortly after the altercation, NOPD detectives interviewed Appellant and observed no visible injuries. Appellant asserts that, based on Mr. Salinas' description of the physical altercation, the assailant should have sustained physical injuries. Appellant asserted that he had no visible physical injuries, thus, he could not have been the assailant.

At the hearing, Mr. Suazo, on direct examination, explained that it was approximately two (2) weeks after the incident that the NOPD detectives produced the photographic line-ups to him; he identified Appellant as the assailant. On cross-examination, Mr. Suazo was presented with photos of Appellant and the man who Appellant believed to be the assailant. Mr. Suazo denied that the men looked alike, and insisted that Appellant was the assailant. Mr. Suazo testified that the assailant was driving a green jeep, but that he was unaware whether a child's car seat was located in the backseat of the vehicle.

Also at the hearing, Mr. Craig,[9] on direct examination, again identified Appellant as the assailant. On cross-examination, Mr. Craig, when shown photos of both Appellant and the man who Appellant believes to the assailant, agreed that the men resembled one another.

Appellant, through Dr. Barsley's testimony, provided uncontroverted evidence that his teeth could not have inflicted the bite marks that Mr. Salinas suffered from the assailant. Appellant also provided uncontroverted evidence, through the police photographs, that he did not have the physical injuries that the assailant likely would have suffered as a result of the physical struggle as Mr. Salinas described. Appellant provided through objective, uncontroverted evidence, i.e., the insurance policies, that he did not own a vehicle like the one that the assailant drove. Further, through birth certificate evidence, Appellant provided uncontroverted evidence that he did not have any infant children and/or grandchildren at the time of the incident. All of Appellant's objective, uncontroverted evidence far outweighed the eyewitness testimony (subjective evidence) of the victims. Appellant proved, through clear and convincing scientific evidence, as well as other evidence, that he is factually innocent of the crimes for which he was previously convicted. Thus, the district court erred in denying Appellant's Application for Compensation for Wrongful Conviction and Imprisonment.

---

[9] When asked by the State if he was "just a random good Samaritan" who was previously unfamiliar with any of the men involved, he answered affirmatively.

## CONCLUSION

For the aforementioned reasons, we reverse the district court's denial of Appellant's Application for Compensation for Wrongful Conviction and Imprisonment pursuant to La. R.S. 15:572.8 and remand for further proceedings.

**REVERSED AND REMANDED**

11