TERRI F. LOVE, Judge.
_L¡The defendant Wilbert Marcelin was convicted of one count of second degree murder and one count of manslaughter. On appeal, the defendant assigns as error: (1) the trial court denied him due process by excluding cross-examination of the investigating detective regarding another suspect; (2) the conviction by non-unanimous verdict violated his constitutional right to a fair trial; and (3) the trial court erred by imposing unconstitutionally excessive maximum sentences and ordering the sentences to run consecutively. We find the trial court did not err in excluding the cross-examination of the investigating detective regarding another suspect in that it was not relevant. We also find the trial court did not err in finding a non-unanimous verdict under La.C.Cr.P. Art. 782(A) constitutional as made clear by Louisiana jurisprudence. Additionally, we find no error with the trial court imposing the maximum sentence for manslaughter because it falls within the provided statutory sentencing range. However, we find that the trial court failed to articulate particular justification for running the sentences for second degree murder and manslaughter consecutively. Therefore, we affirm the conviction and sentences for second degree murder and manslaughter; however, we vacate the consecutive sentence and remand the case for resentencing.

\ .PROCEDURAL HISTORY

Wilbert Marcelin was first charged by indictment with the second degree murder of Lakeisha Taylor and the attempted second degree murder of Stanford Cain. When Mr. Cain died in July 2010, the State entered a nolle prosequi in that case. The State then charged Mr. Marcelin by indictment in the present matter with two counts of second degree murder, violations of La. R.S. 14:30.1. At arraignment, Mr. Marcelin pled not guilty. Defense counsel later filed a motion to declare La.C.Cr.P. Art. 782(A) and La. Const. Art. 1, § 17 unconstitutional, which was denied. A jury trial in this case began; however, a mistrial was granted. Subsequently, defense counsel filed a motion .to bar re-prosecution as a violation of double jeopardy, which the trial court denied.
Prior to the second trial, the trial court granted the State’s oral motion in limine to prevent defense counsel from questioning Detective Elizabeth Garcia about another suspect, Derrick Robertson.[1] Defense *931 counsel’s oral motion to reconsider was denied. A jury was selected, and trial was held. Mr. Marcelin was found guilty as charged of second degree murder as to count one in a 10-2 vote. As to count two, the jury found Mr. Marcelin guilty of manslaughter in an 11-1 [¡¡vote. The defense filed a motion for a new trial and a motion for post-verdict judgment of acquittal, which were both denied.
Thereafter, Mr. Marcelin was sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence as to the second degree murder conviction and to forty years at hard labor as to the manslaughter conviction with the sentences to run consecutively. According to the sentencing transcript, Mr. Marcelin objected to the sentences and filed a motion to reconsider, which was denied.[2] The trial court granted Mr. Marcelin’s motion for appeal. This appeal follows.[3]

FACTUAL BACKGROUND

At trial, the State introduced Stanford Cain’s videotaped deposition wherein he testified as to what happened on the night of the incident. The State also introduced Mr. Cain’s videotaped identification procedure wherein he picked out Mr. Marcelin’s photograph in a six-person photograph lineup. Both videos were played for the jury. Due to the injuries he suffered as a result of the shooting, he was on a ventilator. The following sets forth a summary of Mr. Cain’s testimony.
Stanford Cain Testimony
Stanford Cain testified that he lived with his girlfriend of eight years Lakeisha Taylor and her family. He testified that he and Ms. Taylor were together “24/7.” Mr. Cain testified that on the night of the incident, he and Ms. Taylor left |4Bourbon Street for the Iberville Project to buy heroin from Mr. Marcelin. Mr. Cain recalled that on their way into the “courtway by the graveyard”, he asked a female whom he knew as a drug user, but did not know her name, if she had seen Mr. Marcelin.
Mr. Cain testified that when they neared Mr. Marcelin’s apartment he found him. He also testified that there may have been other people outside at the time, but no one was close to them. He stated that he did not pay attention “to know if [he] recognized anyone.”
Mr. Cain further testified that Mr. Marcelin was upset with him and accused him of taking drugs. Mr. Cain testified that they had a “kind of mean” conversation and he became afraid when Mr. Marcelin pulled a gun from his waist. Mr. Cain testified that neither he nor Ms. Taylor had a weapon.
Mr. Cain stated that he was face to face with Mr. Marcelin, about two feet away. He testified that he was shot from behind but saw the shot “sort of on the side.” He testified that he was shot first and then he heard a second gun shot. Mr. Cain then stated that after he was shot he blacked out and then remembers waking up in the hospital.
*932 Mr. Cain testified that the first time he talked to the police was after two or three days of being in the hospital. During his deposition, Mr. Cain recalled only speaking with Detective Garcia. Mr. Cain testified that Detective Garcia asked him to identify from a photographic lineup who shot him and his girlfriend. Mr. Cain identified Mr. Marcelin as the shooter at the deposition, by photo and in | ¡¡person. During his deposition, the State asked whether he was able to identify the shooter in person that day and when Detective Garcia visited him a few days after the incident. Mr. Cain responded in the affirmative. Mr. Cain further testified that prior to the shooting Mr. Marcelin had “been to [his] house ... a few times.” Additionally, when the State asked Mr. Cain, “So you have no trouble recognizing this man,” Mr. Cain responded, “No ma’am.” Likewise, Mr. Cain indicated that he had not taken any medication in the hours leading up to the deposition and that he was able to understand everything and the questions asked of him. Mr. Cain also' testified that as a result of the shooting he was paralyzed from the neck down.
Charlotte Cain Testimony
Charlotte Cain, Stanford Cain’s mother, testified that on the night of the incident Lakeisha Taylor and her son were both shot. She testified at trial that after her son was shot he was transferred from the hospital to a nursing home where he remained until his death two years later. Charlotte Cain testified that she would visit her son at the nursing home and he was able to communicate with her, but he required a ventilator to assist his breathing. Charlotte Cain also testified that Mr. Cain was not given medication on August 5, 2009, because he was giving a deposition in relation to this case.
Officer Frank Robertson Testimony
At trial, it was stipulated that Officer Frank Robertson was the first officer at the crime scene in the 1400 block of Conti Street at 12:00 a.m., the night of the incident. He observed an unknown black female and unknown black male |f,bleeding from apparent gunshot wounds. Officer Robertson called emergency medical services, and the black male was transported to the hospital. He then called the crime lab to the scene.
Officer Gary Salinger Testimony
Officer Gary Salinger testified at trial that he was employed by NOPD as a crime lab technician. He testified that he arrived at and processed the crime scene on Conti Street. On cross-examination, Officer Salinger admitted that he found no shell casings, spent projectiles, or firearms.
Detective Elizabeth Garcia Testimony
Detective Garcia of the NOPD’s homicide division testified that she was the lead detective in this case. She testified that she conducted the investigation on Conti Street and that NOPD officers canvassed the area for possible witnesses, who were not cooperative. Detective Garcia reviewed footage from crime cameras, but she did not find it helpful. When asked if she developed Mr. Marcelin as a suspect during the investigation, Detective Garcia answered affirmatively. She further indicated that she prepared a photograph lineup and met with Mr. Cain at the hospital. At trial, the State asked Detective Garcia if she was able to communicate with Mr. Cain and she answered in the affirmative. She also stated that she was able to conduct an identification of the shooter with the victim. She testified that the identification procedure was memorialized by videotape that was later transferred onto a DVD, along with Mr. Cain’s videotaped statement. | ./Detective Garcia testified *933 that she then obtained an arrest warrant for Mr. Marcelin.
On cross-examination, Detective Garcia admitted she did not expressly tell Mr. Cain that it was possible that none of the photos was that of the shooter. She also testified that she did not check to see if Mr. Cain received Fentanyl or Propofol on the date of the identification procedure or whether his carbon dioxide level was above normal. Detective Garcia testified that she was not a medical professional and did not know about such medication. She stated that she had the arrest warrant for Mr. Marcelin prior to meeting with Mr. Cain. She also stated that she knew that Mr. Marcelin turned himself in to the police. Detective Garcia admitted at trial that she never spoke with Mr. Marcelin or his family. Additionally, Detective Garcia testified that she did not call the phone number written on Ms. Taylor’s hand.
On re-direct examination, Detective Garcia testified that she was asked to conduct an investigation at the direction of the Orleans Parish District Attorney’s Office after the first trial resulted in a mistrial. Detective Garcia stated that after she wrote her supplemental report she continued to investigate. She testified that no gun was found; therefore, there was no gun with which to match the bullets or casings. With regard to whether Mr. Cain appeared coherent, able to communicate, and lucid when she spoke with him, Detective Garcia answered affirmatively.
Doctor Samantha Huber Testimony
18Pr. Samantha Huber, a medical doctor specializing in forensic pathology at the coroner’s office, testified that she performed the autopsy on Lakeisha Taylor. Dr. Huber testified that Ms. Taylor had a penetrating wound. The bullet entered on the left back of her head. The bullet went through her brain and stopped in her neck. Dr. Huber found the “deformed projectile” in Ms. Taylor’s neck and the “deformed fragment jacket” in her brain. Dr. Huber testified that the shooter was most likely over eighteen inches away from the victim if a handgun was used. Dr. Huber also noted that Ms. Taylor had track marks and opiates in her body, specifically heroin.
Doctor Richard Tracy Testimony
Dr. Richard Tracy, a pathologist consulting with the coroner’s office, performed the autopsy of Mr. Cain, who died a little over two years after the shooting on July 30, 2010. Dr. Tracy testified that the body showed the signs of quadriplegia. Dr. Tracy also stated that the gunshot wound severed the spinal cord within the neck at the upper level of the cervical spine. Dr. Tracy testified that he saw no brain damage and that Mr. Cain’s memory should not have been affected. On cross-examination, Dr. Tracy stated that he found no bullets during the autopsy. He testified that there were some circular scars on Mr. Cain’s chest, but there was no remnant of what caused the paralysis.

ERRORS PATENT

According to the minute entry and docket master entry, the trial court sentenced Mr. Marcelin to life imprisonment at hard labor as to the second degree Rmurder conviction and to forty years at hard labor as to the manslaughter conviction. The sentences were without the benefit of probation, parole, or suspension of sentence. Additionally, the trial court ordered the sentences to run consecutively. The forty-year sentence for manslaughter cannot be served without the benefit of probation, parole, or suspension of sentence, as that would constitute an illegal sentence. See La. R.S. 14:S1(B).
The sentencing transcript, however, indicates that the trial court sentenced Mr. Marcelin to life imprisonment at hard *934 labor without the benefit of probation, parole, or suspension of sentence as to the second degree murder conviction and to forty years at hard labor as to the manslaughter convictions with the sentences to run consecutively. Where there is a discrepancy between a minute entry and the transcript, the transcript prevails. State v. Randall, 10-1027, p. 3 (La.App. 4 Cir. 6/22/11), 69 So.3d 683, 685, writ denied, 11-1560 (La. 1/13/12), 77 So.3d 952. The sentences are therefore legal.

DUE PROCESS

Mr. Marcelin argues that he was denied due process because he was denied his right to confront and cross-examine his accuser under La. Const. Art. 1, § 16. In particular, Mr. Marcelin avers that defense counsel was prevented from presenting a complete defense by excluding relevant cross-examination of Detective Garcia about another possible suspect, Derrick Robertson.
In State v. Thomas, 11-1219, p. 14 (La.App. 4 Cir. 12/6/12), 106 So.3d 665, 674-75, this Court noted:
_JjjjA criminal defendant has the constitutional right to present a defense. U.S. Const. Amend. VI; La. Const. Art. 1, § 16; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Gremillion, 542 So.2d 1074 (La.1989); State v. Vigee, 518 So.2d 501 (La.1988). Due process affords a defendant the right of full confrontation and cross examination of the State’s witnesses. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); State v. Mosby, 595 So.2d 1135 (La.1992). It is difficult to imagine rights more inextricably linked to our concept of a fair trial.
Evidentiary rules may not supersede the fundamental right to present a defense. State v. Sartain, 08-266, p. 16 (La.App. 4 cir. 12/30/08), 2 So.3d 1132, 1141.
(Citation omitted) (quoting State v. Van Winkle, 94-0947, p. 5 (La.6/30/95), 658 So.2d 198, 201-02).
However, evidence may be excluded if it is irrelevant. State v. Casey, 99-0023, pp. 18-19 (La.1/26/00), 775 So.2d 1022, 1037. A teial court’s ruling as to relevancy will not be disturbed absent a clear abuse of discretion. Thomas, 11-1219 at p. 12, 106 So.3d at 679. Additionally, confrontation errors are subject to a harmless error analysis; the “verdict may stand if the reviewing court determines that the guilty verdict rendered after that particular trial was surely unattributable to the error.” State v. Huckabay, 00-1082, p. 26 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1108; State v. Broadway, 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817.
In the instant case, the State argues that the trial court properly found the evidence relating to Derrick Robertson to be irrelevant, and that confrontation errors are subject to a harmless error analysis. The State acknowledges that at one point Detective Garcia suspected Mr. Robertson of the shooting because he had been arrested in the Iberville Housing Development for possession of drugs and firearms; however, Mr. Robertson was arrested at a different time and place, five Indays after the shooting at issue here. Likewise, two eyewitnesses, including the victim Mr. Cain, before he died, positively identified Mr. Marcelin.
The State made an oral motion in limine seeking to bar defense counsel from cross-examining Detective Garcia regarding an individual named Derrick Robertson. The State argued that the police report relating to Mr. Robertson was obtained, and his arrest occurred five days after the incident at issue in this case and in a different part *935 of the housing development. After granting the State’s oral motion in limine, the defense filed a motion to reconsider the ruling. Defense counsel argued that the defense attorneys “did not go out and find Robertson.” He was arrested in the project close in time to the homicide; he was in possession of a firearm and narcotics, and he pled guilty to those charges. Further, defense counsel argued that Detective Garcia learned about Mr. Robertson during her investigation and included him in her report; however, she discounted him as a suspect. Defense counsel argued that it is part of Mr. Marcelin’s defense to show that Detective Garcia should have looked further at Mr. Robertson instead of focusing only on Mr. Marcelin. The trial court stated:
“Well, she made an investigation. She made certain determinations, and the State has a case to prove, and I don’t find that relevant at all. I still don’t find it relevant. It is not within the res gestae of the case. And, it is up for [sic] the State, the quality of evidence that the State produces today will make the decision. And, if it is not of that quality, I don’t find it exculpatory, and I don’t find it in any way or any theory that the defense should have that.”
The trial court found the information relating to Mr. Robertson not relevant. Detective Garcia discounted Mr. Robertson as a suspect because he was arrested five days after the homicides in this case. The trial court found no connection between Mr. Robertson’s arrest and this homicide case. The trial court’s decision |12as to relevance and admissibility will not be disturbed absent an abuse of discretion. In this case, we find no such abuse.
Nonetheless, confrontation and cross-examination errors are subject to a harmless error analysis. In light of Detective Garcia’s testimony as to Mr. Cain’s identification of Mr. Marcelin, Mr. Cain’s videotaped deposition wherein he testifies as to the- events of that night, and the videotaped identification procedure played for the jury wherein he identified Mr. Marcelin as the shooter, the guilty verdict was unattributable to any confrontation error. Therefore, this assignment of error lacks merit.

CONSTITUTIONALITY OF A NON-UNANIMOUS JURY VERDICT

Mr. Marcelin contends that La. C.Cr.P. Art. 782, as applied to the verdicts in this case, violates his constitutional right to due process. The record indicates that the jury vote on the second degree murder charge was 10-2, and the jury vote on the manslaughter charge was 11-1. The verdicts for both charges were not unanimous. Mr. Marcelin alleges that the U.S. Supreme Court decision in Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), which held that the Sixth and Fourteenth Amendments did not prohibit states from securing criminal convictions on a less than unanimous verdict, should not stand.
La.C.Cr.P. Art. 782(A) provides:
Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried a by a jury composed of six jurors, all of whom must concur to render a verdict.
The Louisiana Supreme Court has upheld the constitutionality of La.C.Cr.P. Art. 782 and the Louisiana non-unanimous verdict system.
*936 | lsIn Apodaca v. Oregon, 406 U.S. 404, 410-11, 92 S.Ct. 1628, 1632-33, 32 L.Ed.2d 184 (1972), the United States Supreme Court stated:
[T]he purpose of trial by jury is to prevent oppression by the Government by providing a safeguard against the corrupt or overzealous prosecutor and against the complaint, biased, or eccentric judge.’ Duncan v. Louisiana, 391 U.S. 145 at 156, 88 S.Ct. 1444 at 1451, 20 L.Ed.2d 491 (1968) ... Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen ...’ Williams v. Florida, supra, 399 U.S. 78 at 100, 90 S.Ct. 1893 at 1906, 26 L.Ed.2d 446 (1970). A requirement of unanimity, however, does not materially contribute to the exercise of this commonsense judgment. As we said in Williams, a jury will come to such a judgment as long as it consists of a group of laymen representative of a cross section of the community who have the duty and the opportunity to deliberate, free from outside attempts at intimidation, on the question of a defendant’s guilt. In terms of this function we perceive no difference between juries required to act unanimously and those permitted to convict or acquit by votes of 10 to two or 11 to one. Requiring unanimity would obviously produce hung juries ' in some situations where non-unanimous juries will convict or acquit. But in either case, the interest of the defendant in having the judgment of his peers interposed between himself and the officers of the State who prosecute and judge him is equally well served, (emphasis added).
In State v. Bertrand, 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, the trial court found that La.C.Cr.P. Art. 782(A) violated the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, relative to the number of jurors needed to concur to render a verdict in cases in which punishment is necessarily confinement at hard labor. On direct appeal by the State, the Louisiana Supreme Court reversed, stating in its conclusion:
Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 -violated the Fifth, Sixth, and Fourteenth Amendments. With respect to | Nthat ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of ' superior courts.
Bertrand, 08-2215 at p. 8, 6 So.3d at 743.
This Court previously considered the argument asserted by Mr. Marcelin in State v. Barbour, 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142. See also State v. Boudreaux, 08-1504 (La.App. 4 Cir. 9/29/10), 48 So.3d 1144, writ denied, 10-2434 (La.4/8/11), 61 So.3d 682; and State v. Hugle, 11-1121 (La.App. 4 Cir. 11/7/12), 104 So.3d 598.
In Barbour and previous opinions of this Court, we have cited and relied on Bertrand to refute the argument that the trial court erred in denying the defendant’s motion to declare La.C.Cr.P. Art. 782(A) unconstitutional as violating the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution.
In light of Louisiana jurisprudence relying on Bertrand, non-unanimous twelve-person jury verdicts under La.C.Cr.P. Art. *937 782(A) are constitutional. Accordingly, this assignment of error lacks merit.

EXCESSIVE SENTENCE

In his third assignment of error, Mr. Marcelin argues that the trial court erred by imposing unconstitutionally excessive maximum sentences. Defense counsel admits that the life sentence without the benefit of probation, parole, or suspension of sentence was the mandatory sentence pursuant to La. R.S. 14:30.1. However, defense counsel argues that imposing the maximum sentence as to manslaughter and ordering the sentences to run consecutively, was “nothing more than the needless infliction of pain and suffering.”
The State concedes that the trial court did not assign reasons for the maximum sentence for manslaughter, a sentence still within the statutory limit, but 11fiit claims that the record supports the sentence when Mr. Marcelin shot two victims in the back of their heads; one died, and one lived for two years as a quadriplegic before succumbing to his injuries. The State contends the imposition of the sentences to be served consecutively was within the trial court’s discretion, and the trial court did not abuse its discretion in doing so.
In State v. Batiste, 06-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820, this Court explained the standard of review:
An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Landry, supra [2003-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235]; State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, as noted in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resen-tencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La.C.Cr.P. art. 881.4(D).
If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the ease, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” State v. Landry, 2003-1671 at p. 8, 871 So.2d at 1239. See also State v. Bonicard, 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184.
In State v. Smith, 11-0664, p. 11 (La.App. 4 Cir. 1/30/13), 108 So.3d 376, 390, this Court discussed the law pertinent to excessive sentence claims:
Excessive sentences are prohibited under the Eighth Amendment of the Unites [sic] States Constitution and La. Const, art. I, § 20. A sentence may be constitutionally excessive even when the sentence | lfifalls within the range permitted by statute. See State v. Sepulvado, 367 So.2d 762, 769 (La.1979). For a sentence to be found excessive, it must be “so grossly disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice.” State v. Cann, 471 So.2d *938 701, 703 (La.1985). The district court is granted broad sentencing discretion, and we will not overturn the district court’s judgment absent an abuse of that discretion. See State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462.
To determine whether the district court has abused its broad sentencing discretion, we first discern whether the court took into account the sentencing criteria listed in La.C.Cr.P. art. 894.1. See Sepulvado, 367 So.2d at 767-768. The district court, while not required to expound on all factors listed in Article 894. 1, is required to take into account both aggravating and mitigating factors. See State v. Square, 433 So.2d 104, 110 (La.1983). Our purpose is not to enforce mechanical compliance by a sentencing judge, but to ensure that there is a factual basis for the sentence imposed. See State v. Batiste, 06-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820. If we find that the district court properly articulated its reasons for the defendant’s sentence, we then determine whether the defendant’s sentence was tailored to both the severity of his crime and his personal situation. See State v. Spencer, 374 So.2d 1195 (La.1979).
Under La. R.S. 14:31(B), the sentence for manslaughter is imprisonment at hard labor for not more than forty years. This Court has previously affirmed maximum forty year sentences for manslaughter. See State v. Jones, 01-0630 (La.App. 4 Cir. 3/20/02), 814 So.2d 623 (Defendant originally charged with second degree murder and attempted second degree murder, but the defendant was found guilty of manslaughter and attempted manslaughter; multiple shots fired with at least one into the back of each of the two male victims who had no weapons); State v. Williams, 99-2355 (La.App. 4 Cir. 12/13/00), 776 So.2d 604 (Defendant was charged with first degree murder and found guilty of manslaughter; the court noted defendant had the intent to kill because he shot nineteen times through a door).
La.C.Cr.P. Art. 883 provides in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless [17the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently ...
In State v. Jefferson, 04-1960, p. 39 (La.App. 4 Cir. 12/21/05), 922 So.2d 577, 604, this Court explained, while “Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, a trial judge retains the discretion to impose consecutive sentences on the basis of other factors.” Nevertheless, the trial court must articulate specific justification “beyond a mere articulation of the standard sentencing guidelines set forth in La. C.Cr.P. Art. 894.1” for imposing a consecutive sentence for crimes arising out of the same act. Id. (citing State v. Dempsey, 02-1867, p. 5 (La.App. 4 Cir. 4/2/03), 844 So.2d 1037, 1040, writ denied, 03-1917 (La.6/25/04), 876 So.2d 823).
The Louisiana Supreme Court in State v. Thomas, 98-1144, p. 1 (La.10/9/98), 719 So.2d 49, further expounded on the factors the trial court should consider:
“Although Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, La.C.Cr.P. art. 883; State v. Underwood, 353 So.2d 1013, 1019 (La.1977), a trial judge retains discretion to impose consecutive penalties on the basis of other factors, *939 including the offender’s past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community.”
The Supreme Court in Thomas determined that the defendant endangered deputies outside the St. Landry Parish Courthouse, court personnel, and the public. Id. Further, the Court reasoned that the defendant “compounded the risk to the general public by fleeing with her husband and eluding capture for eight days.” Id., 98-1144 at p. 1, 719 So.2d at 50. The Court reasoned that these circumstances gave the trial court particular justification for imposing consecutive sentences. Id. In 11SThomas, the Supreme Court reversed this Court’s decision only to the extent that it amended the consecutive sentences on two counts of armed robbery to concurrent sentences and reinstated the trial court’s consecutive sentences on two of the three counts of armed robbery, noting that the total sentence was within the thirty-five to fifty year range that was upheld for first offenders. Id.
In the present case, the trial court sentenced Mr. Marcelin relative to the second degree murder conviction to mandatory life imprisonment without the benefit of probation, parole, or suspension of sentence. With regard to the manslaughter conviction, the trial court sentenced Mr. Marcelin to forty years. Defense counsel filed a motion to reconsider. The trial court stated:
“[I]t is a mandatory sentence on the life imprisonment, so I don’t know what discretion I have on that anyhow. But, it is filed into the record, and you can call that to the attention of the Court if you want a hearing on it anytime.”
As to whether the sentences were to run concurrently or consecutively, the State argued that because the homicides arose from a single incident, the sentences run concurrently unless the trial court stated that the sentences are to run consecutively. Thereafter, the trial court stated that the sentences were to run consecutively. Counsel for Mr. Marcelin objected.
While the trial court did not set out the reasons for imposing the maximum sentence for the manslaughter conviction, the trial court reviewed the evidence and heard the testimony of the doctors who performed the autopsies. The trial court heard testimony describing how Mr. Marcelin shot Lakeisha Taylor in the head, and she died in the courtyard of the Iber-ville Housing Development. The trial court also heard testimony, as well as presided over the deposition of Stanford Cain, describing how Mr. Marcelin shot Mr. Cain in the neck area severing his [ 19spinal cord and leaving him a quadriplegic for two years before he died of pneumonia. Had the jury found Mr. Marcelin guilty of the second degree murder of Mr. Cain, Mr. Marcelin would have received another life sentence without the benefit of probation, parole, or suspension of sentence. These circumstances provided the trial court with justification for the imposition of the statutory maximum sentence of forty years.
Nevertheless, in order to run the sentences consecutively when the crimes arise out of the same act, the trial court is required to articulate a particular justification for such a sentence beyond merely setting out the standard guidelines of La.C.Cr.P. Art. 894.1. In this case, the trial court did not provide articulated reasons for running the forty-year sentence for manslaughter consecutively with his life sentence for second degree murder. Accordingly, the consecutive sentence is vacated, and the case is remanded for re-sentencing.

DECREE

For the reasons set forth above, we find the trial court did not deny Mr. *940 Marcelin due process by excluding cross-examination of the investigating detective regarding another suspect in that it was not relevant. We also find that the trial court did not err in finding a non-unanimous verdict under La.C.Cr.P. Art. 782(A) constitutional as made clear by Louisiana jurisprudence. Furthermore, we find no error in the trial court imposing the maximum sentence for manslaughter in light of the fact that it falls within the provided statutory sentencing range. However, we do find the trial court failed to articulate particular justification for running the sentences for second degree murder and manslaughter consecutively. Therefore, we affirm the conviction and sentences for second degree murder and | ^manslaughter; and, we vacate the consecutive sentence and remand the case for resentencing in accordance with this opinion.
AFFIRMED IN PART; VACATED IN PART AND REMANDED

. Appellate counsel, the State, and the trial transcript offer three different spellings of the *931 suspect. Herein, this Court refers to the suspect as "Derrick Robertson.”

. Although appellate counsel in the procedural history section of the brief indicates that a motion to reconsider sentence was filed and denied, as shown in the transcript, in appellant's argument relating to excessive sentence, counsel states that a motion to reconsider was not filed.

. After the record was lodged in this matter, Mr. Marcelin filed a motion to file a pro se supplemental brief, which this Court granted ordering Mr. Marcelin to file a supplemental brief within forty-five days. However, no pro se supplemental brief was filed with this Court.